**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

VIRGINIA E. PELLOW,

        Plaintiff,                      Case Number: 09-11587

v.                                            JOHN FEIKENS
                                               UNITED STATES DISTRICT COURT

MICHAEL J. ASTRUE, Commissioner of
Social Security,                               VIRGINIA M. MORGAN
                                               UNITED STATES MAGISTRATE JUDGE

        Defendant.

_____ /

**REPORT AND RECOMMENDATION DENYING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT (Doc. No. 12) AND GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (Doc. No. 13)**

       Plaintiff, Virginia E. Pellow, through her counsel, appeals the Social Security Commissioner's decision denying her disability insurance benefits and supplemental security income. This case comes before the court on the parties' cross-motions for summary judgment. For the reasons stated below, the court recommends that the Commissioner's motion for summary judgment be **GRANTED**, that Plaintiff's motion for summary judgment be **DENIED**, and that Plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

**I. Background**

       On March 21, 2006, Plaintiff filed an application for a period of disability and disability insurance benefits and supplemental security income. (Tr. 119-123, 130-133). Plaintiff claimed disability due to affective and anxiety related disorders. (Tr. 86). Plaintiff was 32 years old on the alleged disability onset date. (Tr. 24).

Plaintiff's claims were initially denied on August 10, 2006. (Tr. 85-90). Thereafter, Plaintiff filed a timely request for a hearing. (Tr. 101). Plaintiff appeared, with her attorney, for an administrative hearing on July 9, 2008. (Tr. 28). On September 15, 2008, Administrative Law Judge James Gildea issued a decision affirming the denial of disability benefits. (Tr. 11-25).

ALJ Gildea applied the five-step sequential analysis set out in the SSA's regulations to determine whether Plaintiff qualified for benefits. 20 C.F.R. § 404.1520(b)-(f). At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since June 18, 2003, the alleged onset date. (Tr. 16). At step two, ALJ Gildea found that Plaintiff has severe impairments of bipolar disorder and anxiety related disorder and the non-severe impairments of a thyroid condition and low sugar. (Tr. 16). The ALJ concluded, at step three, that Plaintiff's mental impairments did not meet or medically equal the criteria of listing 12.04 because in the areas of daily living, social functioning, concentration Plaintiff has only mild difficulties and Plaintiff has not experienced any episodes of decompensation. (Tr. 17). At steps four and five, ALJ Gildea found that Plaintiff has the residual functional capacity to perform medium work as long as she avoids exposure to concentrated fumes, odors, gases, or poor ventilation. (Tr. 18). The ALJ further found that Plaintiff is restricted to simple and unskilled jobs that do not require more than occasional interaction with co-workers or the general public, including performing past relevant work as a cleaner. (Tr. 18, 24).

Thereafter, Plaintiff filed a timely request for review by the Social Security Appeals Council. The Appeals Council denied her request on March 6, 2009. (Tr. 1-3).

On April 28, 2009, Plaintiff initiated this civil action for judicial review of the denial of benefits. (Doc. No. 1). That same day, the Honorable John Feikens referred the case to this court for determination of all non-dispositive motions and issuance of a Report and Recommendation.

(Doc. No. 3).

## II. Standard of Review

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. *Brainard v. Secretary of HHS*, 889 F.2d 679, 681 (6th Cir. 1989); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). The Sixth Circuit stated in *Brainard*, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." "[The] decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key*, 109 F.3d at 273.

## III. Analysis

### A. Plaintiff's Other Impairments

Plaintiff first argues that the ALJ failed to consider medical evidence that Plaintiff also has the following severe impairments: post-traumatic stress disorder, depression, ADHD, cognitive deficits, borderline personality disorder, and social anxiety disorder. (Doc. No. 12, Pl.'s MSJ 2).

The Commissioner responds that, contrary to Plaintiff's argument, that the ALJ did not find

3

Plaintiff's other conditions irrelevant because the ALJ found Plaintiff's other conditions to be severe impairments and considered all of Plaintiff's afflictions in finding her residual functional capacity. (Doc. No. 13, Def.'s MSJ 9-10).

There is no law, regulation, or case, which requires the ALJ to decide whether all of a claimant's impairments are severe. Rather, the ALJ must consider whether "the combined effect" of the claimants' impairments in determining the claimants' residual functional capacity. Pursuant to 20 C.F.R. §§ 404.1545(a)(2) and 416.945(a)(2): "If you have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity."  Thus, "[o]nce one severe impairment is found, the combined effect of all impairments must be considered, even if other impairments would not be severe." *White v. Comm'r of Soc. Sec.*, 312 Fed. Appx. 779, 787 (6th Cir.2009) (referencing 20 C.F.R. §§ 404.1523 and 404.1545(a)(2)).

In the instant case, the ALJ found that Plaintiff suffered from the severe impairments of bi-polar disorder and anxiety related disorder.  Thereafter, the ALJ properly continued on to the remaining steps in his disability determination. In determining Plaintiff's residual functional capacity, the ALJ discussed, at length, Plaintiff's medical history.  This discussion includes references to Plaintiff's diagnoses of depression (Tr. 19), ADD/ADHD (Tr. 21), and PTSD (Tr. 21, 22).  Further, contrary to Plaintiff's claim, Dr. Pestrue did not diagnose her with cognitive defects. (Tr. 246).  In any event, the ALJ clearly considered Dr. Pestrue's opinion, as he discussed Dr. Pestrue's findings in detail in his opinion. (Tr. 20).  Also, the ALJ noted that Plaintiff had, in the past, "exhibited depression and evidence of bipolar or borderline personality disorder." (Tr. 18).

Because the ALJ considered Plaintiff's severe and nonsevere impairments in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the fact that the ALJ did not find some of her impairments to be severe is legally irrelevant. *See Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987)(holding that the failure to find that an impairment was severe was harmless error where other impairments were deemed severe). Plaintiff has not shown, therefore, that the ALJ committed reversible error.

**B. The Treating Physician's Opinion**

Plaintiff next argues that the ALJ erred by failing to give the findings and opinions of Dr. Bogdanovic, Plaintiff's treating physician, controlling weight. (Pl.'s MSJ 4). Plaintiff asserts that Dr. Bogdanovic's April 3, 2003 finding that she had "marked limitations" in her ability to relate to co-workers, cope with work stresses, and maintain attention and concentration and findings by a counselor at List were not considered by the ALJ and, instead, the ALJ improperly relied on the opinions of non-examining medical consultants. (Pl.'s MSJ 4, 6).

The Commissioner responds that the ALJ properly assessed Dr. Bogdanovic's opinion and reasonably declined to adopt Ms. Longlet's opinion. (Def.'s MSJ 12). The Commissioner contends that the ALJ's findings that Plaintiff is capable of jobs that are simple and unskilled and that only require occasional interaction with co-workers and the general public is not inconsistent with Dr. Bogdanovic's opinion as a whole because Dr. Bogdanovic opined that overall Plaintiff had only mild difficulties in maintaining social functioning and had mild limitations in her ability to understand, remember, and carry out simple job instructions. (Def.'s MSJ 13-14). The Commissioner further argues that Ms. Longlet's opinion, Plaintiff's therapist at List, is not entitled to controlling weight because, as a social worker, Ms. Longlet is not an acceptable medical source. (Def.'s MSJ 14).

5

Thus, Ms. Longlet's opinion is relevant but not controlling. (Def.'s MSJ 14).

In the ALJ's decision, in the section on Plaintiff's occupational limitations, the ALJ noted that "Dr. Bogdanovic found that the claimant had mild limitations in restriction of activities of daily living, mild limitations in maintaining social functioning and moderate limitations in maintaining concentration, persistence or pace, and one/two episodes of decompensation." (Tr. 21). In his discussion of Plaintiff's residual functional capacity, the ALJ wrote that he had given "significant weight to the opinions of the DDS non-examining medical consultant (Exhibits 9F and 10F) in finding that the claimant is clearly capable of sustaining simple, routine tasks as demonstrated by the claimant's records, her compliance with treatment, her range of daily activities and the claimant's testimony." (Tr. 23). Further, ALJ Gildea stated that he considered Dr. Bogdanovic's findings and conclusions in making his RFC determination and that Dr. Bogdanovic's opinions were not "inconsistent" with his RFC assessment. (Tr. 23).

The treating source regulation, 20 C.F.R. § 404.1527(d)(2), generally requires the ALJ to accord controlling weight to a treating physician's opinion if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). If the ALJ rejects the treating physician's opinion, he or she must give good reason for doing so. *See* 20 C.F.R. §404.1527(d)(2).

In the instant case, the ALJ did not reject Dr. Bogdanovic's opinion. Rather, the ALJ concluded that Plaintiff has the RFC to perform simple and unskilled work that requires only occasional interaction with co-workers and the general public, which is not inconsistent with Dr. Bogdanovic's opinion. There is substantial evidence in the record to support the ALJ's conclusion.

On April 3, 2008, Dr. Bogdanovic opined that in the area of making occupational

6

adjustments Plaintiff had moderate limitations in her ability to follow work rules, deal with the public, interact with supervisors, use judgment and function independently and marked limitations in her ability to relate to co-workers, deal with work stresses, and maintain attention/concentration. (Tr. 601). Dr. Bogdanovic also concluded that in the area of functional limitations plaintiff had mild limitations in terms of difficulties in maintaining social functioning, mild limitations in the restriction of activities of daily living, and moderate limitations in her difficulties in maintaining concentration, persistence or pace. (Tr. 602). Thus, Dr. Bogdanovic's opinion regarding Plaintiff's functional limitations, which is Dr. Bogdanovic's opinion on Plaintiff's residual functional capacity for work, is consistent with the ALJ's RFC finding. Dr. Bogdanovic found only mild or moderate limitations in the areas of daily living, social functioning, concentration, and episodes of decompensation. (Tr. 602). The ALJ's RFC determination took into consideration Dr. Bogdanovic's findings of Plaintiff's limitations in working with others and dealing with the general public and her inability to do more than skilled or semi-skilled work. (Tr. 23). Because the record shows that the ALJ gave considerable, if not controlling weight, to Dr. Bogdanovic's opinion, in addition to considering the opinion of a non-examining medical source, Plaintiff has not shown that the ALJ has committed reversible error in his evaluation of her residual functional capacity to work.

Moreover, the opinion of Plaintiff's therapist at List, Rebecca Longlet, a Licensed Master Social Worker, is not entitled to controlling weight, contrary to Plaintiff's argument. Medical opinions from treating sources are generally entitled to controlling weight. *See* 20 C.F.R. § 404.1527. However, only medically acceptable sources may deliver medical opinions; social workers are not acceptable medical sources. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a). Thus, Ms. Longlet's opinion, while relevant evidence, is not entitled to controlling weight. Also, it is evident

7

from the ALJ's decision that he considered Plaintiff's therapy records from List, as the ALJ notes that Plaintiff reported in 2006 of having difficulty functioning daily, chronic mood instability, and a history of suicidal ideations to Ms. Longlett and that Ms. Longlet conducted several therapy sessions with Plaintiff. (Tr. 20). Because social worker's opinions are not entitled to controlling weight and the ALJ considered Plaintiff's records from List, Plaintiffs has not established reversible error.

### C. Plaintiff's Global Assessments of Functioning Scores

Plaintiff argues that the ALJ failed to address her consistently low Global Assessments of Functioning (GAF) scores in making his RFC determination. (Pl.'s MSJ 8). Plaintiff asserts that her GAF scores are "medical opinions" that must be considered by the ALJ. (Pl.'s MSJ 9).

The Commissioner responds that there no controlling authority that requires the ALJ to give credence to GAF scores. (Def.'s MSJ 15). The Commissioner further argues that the ALJ noted Plaintiff's various GAF scores in his decision. (Def.'s MSJ 16).

In his recitation of Plaintiff's mental health history, ALJ Gildea noted that Plaintiff had a GAF score of 60 on December 6, 2001, 55 on May 7, 2002, and 52 on May 25, 2006. (Tr. 18-19, 21, 446, 514, 521). Even though the ALJ did not make note of Plaintiff's other GAF scores, the ALJ was not required to specifically consider Plaintiff's GAF scores. Plaintiff's GAF scores are a relevant part of her mental health history, but the GAF scores are by no means controlling, nor is there any law, regulation, or controlling case law that requires that the scores receive significant weight in the ALJ's evaluation of her residual functional capacity. Moreover, the ALJ is not required to comment on every piece of evidence in the record. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). For these reasons, Plaintiff has not overcome her

8

burden of showing that reversible error occurred.

### D. Plaintiff's Credibility

Plaintiff's last argument is that the ALJ substantially misconstrued her testimony regarding her past work experience and her participation in Bible study. (Pl.'s MSJ 10). With respect to Plaintiff's past work experience, Plaintiff argues that the ALJ erred in finding that her work at Matthew's Pickle Factory indicated an ability to do substantial gainful activity. (Pl.'s MSJ 13). Plaintiff further argues that her work at the pickle factory should be considered favored or sheltered work or an unsuccessful work attempt. (Pl.'s MSJ 12). Plaintiff also contends that the ALJ's findings that she belongs to a Bible study class and invites others into her home for Bible study are unfounded, and should not have been used by the ALJ to conclude that Plaintiff is capable of occasionally interacting with co-workers and the general public. (Pl.'s MSJ 13-14).

The Commissioner responds that the ALJ appropriately considered the evidence in the record and reasonably concluded that she was less than fully credible regarding her ability to work. (Def.'s MSJ 17). With respect to Plaintiff's work at the pickle factory, the Commissioner contends that the ALJ's conclusion that Plaintiff's sporadic work was due to the nature of the work rather than her mental health is supported by evidence in the record that the work was seasonal, the pickle factory employed her during three different years, and she received a bonus. (Def.'s MSJ 17). The Commissioner also notes that Plaintiff's argument that her work at the pickle factory should be considered favored or sheltered work or an unsuccessful work attempt is legally irrelevant because the ALJ did not consider any of Plaintiff's work after June 18, 2003 to be substantial gainful activity. (Def.'s Br. 19). In regard to Plaintiff's argument that the ALJ misconstrued her testimony about participating in Bible study, the Commissioner points out that Plaintiff's Bible study participation

9

is only one of several facts the ALJ considered in finding that Plaintiff is capable of occasionally interacting with co-workers and the general public. (Def.'s MSJ 19).

With respect to Plaintiff's work history at the pickle factory, the ALJ made the following findings:

> The claimant testified that she has been unable to work principally because of severe anxiety and her inability to be in the company of other people, especially non-family members and strangers. She testified that although she had worked in a pickle factory, she frequently had to leave and go home because of anxiety attacks. The claimant's attorney provided some work attendance records from the years 2003, 2004 and 2005. The claimant testified that these records show that she was only able to stay at work for short periods of time. She also testified that her employer allowed her to leave whenever she wanted.
>
> However, the undersigned takes note of the fact that this work is seasonable and by its nature subject to short work periods. The time records furnished by the claimant, while reflecting less than eight hours of work per day, also show, at least in one case (that being in 2005), the claimant earned a bonus. The undersigned finds it unlikely that she would have been awarded a bonus if she were leaving work constantly and not able to perform at the same level as other employees who were working for the same employer. The undersigned also finds it highly unlikely that a small pickle processor would keep someone in their employ that was constantly leaving work because of anxiety attacks. The undersigned finds it more probable that the short hours put in by the claimant were due to the needs of the employer.

(Tr. 23).

The ALJ's finding Plaintiff's testimony regarding her work at the pickle factory was not entirely credible is supported by substantial evidence in the record. As Plaintiff acknowledges, the work was seasonal, she was hired for the pickle seasons of 2004, 2005, and 2007, and she received a bonus in 2005. From this evidence, the ALJ could conclude that Plaintiff's sporadic work at the factory was due to the needs of the factory, rather than her anxiety. As the ALJ concluded, it seems unlikely that a small pickle factory would continue to employ someone, and even reward her with a bonus, if she was not able to work as the employer required. Because there is substantial evidence

10

to support the ALJ's conclusion, Plaintiff has not overcome her burden of showing reversible error. "[The] decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key*, 109 F.3d at 273. In light of this court's deferential approach to credibility assessments, Plaintiff has failed to demonstrate that the ALJ's adverse-credibility finding was not supported by substantial evidence. *See Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir.1994) ("The ALJ's credibility findings are subject to substantial deference on review . . . .") (citation omitted).

Plaintiff's argument that her testimony is supported by a August 25, 2008 letter from Matthews Pickle Co. to the Appeals Council is unavailing for two reasons: 1) the letter, which Plaintiff claims is attached to her brief, is not attached to her brief, nor is it in the record; and 2) evidence that was submitted to the Appeals Council, but the Appeals Council decided not to review the claimant's application for benefits, cannot be used by this court in deciding whether to uphold, modify, or reverse the ALJ's decision. *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).

Also, Plaintiff's argument that her work at the pickle factory should be considered "favored or sheltered work" or "an unsuccessful work attempt" is irrelevant because the ALJ found that none of the work Plaintiff performed after June 18, 2003, the alleged onset date, was substantial gainful activity. Thus, the fact that the ALJ did not consider Plaintiff's work at the pickle factory "favored or sheltered work" or "an unsuccessful work attempt" did not effect the overall disability determination.

Turning to Plaintiff's argument that the ALJ also erred in judging her credibility in regards

11

to her testimony about her participation in Bible study and, as a result, incorrectly concluded that she could interact with smaller groups of people.

At the administrative hearing, Plaintiff testified that she participates in a Bible study with two or three other people in her own home. (Tr. 51-52). Plaintiff had started the Bible study one week before the administrative hearing. (Tr. 51).

The ALJ made the following findings regarding Plaintiff's ability to socialize:

> Although the claimant testified that she belongs to a Bible study class, but is only able to participate out of her home due to her anxiety. The undersigned notes that in Dr. Bogdanovic's records the claimant stated that she attended Pentecostal Church even though she is not a member. (Exhibit 19F/20). The claimant testified that she grocery shops, although does so in a hurry to get away from other people. The claimant testified that she invites others into her home for Bible study. The undersigned notes that these are activities that reveal the claimant is at least capable of social interaction with smaller groups of people.

(Tr. 23).

The court finds that the ALJ's conclusion that Plaintiff can socially interact with small groups of people is supported with substantial evidence in the record. Contrary to Plaintiff's argument, the ALJ did not rely solely on her testimony that she participates in Bible study to conclude that she is capable of interacting with people in small groups. The ALJ also cited Plaintiff's church attendance and her trips to the grocery store as evidence that Plaintiff is capable of socializing within small groups. This evidence, in addition to Plaintiff's willingness to host a Bible study in her home, support the ALJ's conclusion that Plaintiff is able to interact with small groups of people. Therefore, Plaintiff's argument that the ALJ improperly interpreted her testimony regarding her Bible study group is meritless.

## V. Conclusion

For the reasons stated above, the court recommends that the Commissioner's motion for

summary judgment be **GRANTED**, that plaintiff's motion for summary judgment be **DENIED**, and that plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991).. The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                                     S/Virginia M. Morgan
                                     Virginia M. Morgan
                                     United States Magistrate Judge

Dated: March 31, 2010

**PROOF OF SERVICE**

The undersigned certifies that the foregoing was served upon counsel of record via the Court's ECF System and/or U. S. Mail on March 31, 2010.

                                     s/Jane Johnson
                                     Case Manager to
                                     Magistrate Judge Virginia M. Morgan